**Mary BRADLEY, Plaintiff–Appellant,**

v.

**HARCOURT, BRACE AND COMPANY, Defendant–Appellee.**

No. 95–56003.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1996.

Decided Dec. 30, 1996.

Patricia Doninger, San Diego, California, for plaintiff-appellant.

Phillip L. Kossy and Deanna M. Baker, Littler, Mendelson, Fastiff, Tichy & Mathiason, San Diego, California, for defendant-appellee.

Before: BRUNETTI, TROTT, and
THOMAS, Circuit Judges.

TROTT, Circuit Judge:

## OVERVIEW

Mary Bradley appeals the district court's grant of summary judgment in favor of Harcourt, Brace and Company ("Harcourt") on her claims of sex discrimination and disability discrimination. We must decide whether Bradley has produced sufficient evidence to establish a genuine factual dispute regarding: (1) whether Harcourt's articulated justifications for her termination-poor work performance and misconduct-are pretexts for unlawful sex discrimination; and (2) whether Bradley has an impairment that substantially limits her ability to work. Because we conclude that Bradley has produced no meaningful evidence to rebut Harcourt's proffered reasons for her termination or to counter the strong inference of nondiscrimination that arises because the same person who hired Bradley fired her only a year later, we affirm the grant of summary judgment for Harcourt on Bradley's sex discrimination claims. Further, because Bradley has produced no material evidence that she has a disability, we affirm the grant of summary judgment on the disability claim.

## BACKGROUND

Evelyn Sasmor, a senior vice president at Harcourt, hired Mary Bradley as an information services manager in February 1992. In accordance with company policy, Harcourt placed Bradley on an initial ninety-day probation, to end May 24, 1992. On May 25, 1992, Bradley was in a non-work-related car accident. As a result of the accident, she missed four days of work. On June 2, 1992, Sasmor notified Bradley that her probationary period would be extended another ninety days, because three months was not enough time to evaluate someone in her managerial position. Sasmor claims the decision was made prior to Bradley's accident and was based on her concerns about Bradley's technical skills and her failure to follow up on assignments. On June 3, 1992, Bradley produced a note from her doctor indicating that she needed to work part-time for approximately two months. Harcourt allowed her to work part-time and paid her full salary. Eventually, Bradley returned to full-time work. Her probation ended on August 24, 1992.

Sasmor received numerous complaints about Bradley's work before and after the accident and was concerned with several problem areas of Bradley's performance. Additionally, Bradley asked a subordinate to serve as a reference for her husband and to tell his potential employers that he worked at Harcourt when he did not; this conduct constituted a breach of customary business practices at Harcourt. On January 28, 1993, Sasmor, in the presence of a human resources representative, notified Bradley she was on probation again. On February 10, 1993, Sasmor informed Bradley of her termination, but the parties dispute whether she was ever officially terminated. Although Harcourt had notified Bradley of her termination on February 10, 1993, Harcourt allowed Bradley time to review and sign termination documents. Bradley did not return those documents, but instead filed a disability claim with Harcourt. Harcourt then placed her on short-term disability and paid her through August, 1994.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

## DISCUSSION

### I. Sex Discrimination Claim

Bradley brought sex discrimination claims under both federal and state law.

California courts have relied upon federal interpretations of Title VII to interpret analogous provisions of the California Fair Employment and Housing Act (FEHA), which prohibits unlawful discrimination. *Clark v. Claremont Univ. Ctr. & Graduate Sch.,* 6 Cal.App.4th 639, 662, 8 Cal.Rptr.2d 151 (1992). Thus, we pursue the same analysis for Bradley's federal and state law claims.

Bradley bears the initial burden of establishing a prima facie case of discrimination by introducing evidence that gives rise to an inference of unlawful discrimination. For the purposes of Harcourt's motion for summary judgment, we assume—as did the district court and Harcourt—that Bradley has met her prima facie showing. Thus, the burden shifts to Harcourt to produce evidence that it had a legitimate, nondiscriminatory reason for terminating Bradley. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253–55, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). To rebut the prima facie case, Harcourt must "produc[e] an explanation" for its actions, that is, it must show that the employment action was taken for "a legitimate, nondiscriminatory reason." *St. Mary's Honor Ctr.,* 509 U.S. at 506–07, 113 S.Ct. at 2747 (citation omitted). Supported by the declaration of Evelyn Sasmor, Harcourt presented two reasons for Bradley's termination:[1] (1) inadequate work performance; and (2) behavior not in accordance with customary business practices (requesting a subordinate to lie).

■ Harcourt has met its burden by articulating a legitimate reason for discharge. Thus, the presumption of unlawful discrimination "simply drops out of the picture," *id.* at 511, 113 S.Ct. at 2749, and Bradley bears the ultimate burden of persuading the court that the stated reason for the discharge was false and the true reason for the discharge was unlawful sex discrimination. *Id.* at 507–08, 113 S.Ct. at 2747–48; *Lindahl v. Air France,* 930 F.2d 1434, 1437 (9th Cir.1991). To avoid summary judgment, Bradley "must

do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses." *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 890 (9th Cir.1994) (citation omitted). She must produce "specific, substantial evidence of pretext." *Id.*

■ Bradley produced no meaningful evidence indicating either that Harcourt's proffered explanation was false or that her supervisor harbored discriminatory animus towards her because she was a woman. Bradley claims she had been performing her job adequately and had received no feedback indicating otherwise. However, an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact. *Schuler v. Chronicle Broadcasting Co., Inc.,* 793 F.2d 1010, 1011 (9th Cir.1986). Further, Bradley does not dispute asking the subordinate to lie.

■ Bradley argues that her supervisor's real reason for terminating her was sex discrimination, because she wanted to give Bradley's position to a male. However, Sasmor, the person who terminated Bradley, is the same person who originally made the decision to hire her less than a year earlier. In this context, Bradley's allegation that her supervisor wanted a male in the position is at best suspicious. If Sasmor had preferred to place a man in the position, we can see no reason why she would have hired a woman only a year earlier. As the Fourth Circuit has observed:

> One is quickly drawn to the realization that claims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.

*Proud v. Stone,* 945 F.2d 796, 797 (4th Cir. 1991) (quotations omitted). We therefore hold that where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur

---

1. Harcourt contends that Bradley's claims must fail because she cannot establish that she was fired. Because we decide that Bradley has failed

to establish either of her discrimination claims, we need not decide when and if Bradley was terminated.

within a short period of time, a strong inference arises that there was no discriminatory motive. *See Lowe v. J.B. Hunt Transp., Inc.,* 963 F.2d 173 (8th Cir.1992) (finding argument that company developed aversion to older people less than two years after hiring member of protected age group "simply incredible"); *Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461, 464 (6th Cir.1995) ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class."), *cert. denied,* —— U.S. ——, 116 S.Ct. 785, 133 L.Ed.2d 736 (1996). *But see Waldron v. SL Indus., Inc.,* 56 F.3d 491, 495 n. 6 (3d Cir.1995) (refusing to follow *Proud* and accord presumptive value to the fact that the same actor hired and fired the plaintiff, instead considering this fact to be evidence of non-discrimination).

Bradley cannot rebut this inference. She points to Sasmor's interaction with Bradley's subordinate Tom Jackson as evidence of sex discrimination, claiming that Sasmor: held conversations with Jackson and without Bradley to discuss procedures within the department; assigned work to Jackson without Bradley's knowledge; believed his accounts of events over Bradley's prior to any investigation; lent more credence to Jackson's opinion on technical matters; stated that "he is wonderful;" and invited Jackson's criticism of a project of Bradley's. These allegations do not establish that Sasmor terminated Bradley because of sex discrimination. Nothing indicates that Sasmor's favoritism of Jackson stemmed from his sex rather than his competence or performance, particularly in light of Bradley's inadequate performance during the same period.

Because Bradley did not produce any evidence showing Harcourt's proffered reasons were pretexts for an improper discriminatory motive, we affirm the grant of summary judgment on the sex discrimination claims.

## II. Disability Discrimination Claim

■ Bradley brought disability discrimination claims under both the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, and the FEHA, Cal. Gov't Code § 12940.

California relies on federal discrimination decisions to interpret the FEHA. Thus, we proceed with the same analysis for the purposes of both claims.

■ The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). To prevail on her disability discrimination claim, Bradley must establish: (1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, with or without reasonable accommodation, that is, able to perform the essential functions of the job; and (3) that the employer terminated her because of her disability. *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996).

■ Bradley must first establish that she has a disability. The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102. Bradley asserts that the lingering effects from her injuries, manifested as concentration and memory problems, substantially limited her ability to work. Working is considered to be a major life activity. 29 C.F.R. § 1630.2(i). However, Bradley presents no evidence—not even medical reports—that supports the existence of these alleged impairments. Bradley admits she never specifically told Sasmor that she was disabled. In fact, when Sasmor asked her if she felt able to resume work following her accident, Bradley assured her that she did. Further, Bradley stated in her deposition that her disability began with her termination: "I believe that when she told me that I was fired, that that is the start of my disability." No evidence, beyond her own testimony, supports the existence of an impairment during the time Bradley was employed.

■ Further, we are troubled by the inconsistent positions Bradley takes with regard to the adequacy of her work performance. Although we will not invoke the doctrine of judicial estoppel because Bradley takes her inconsistent positions in the same

litigation,[2] we believe the policy underlying the doctrine is instructive. Judicial estoppel, also known as the doctrine of preclusion of inconsistent positions, "is intended to protect against a litigant playing fast and loose with the courts," gaining an advantage by taking one position, then seeking to gain a second advantage by taking an incompatible position. *Rissetto v. Plumbers and Steamfitters Local 343,* 94 F.3d 597, 600–01 (9th Cir.1996) (quoting *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990), *cert. denied,* 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991)). The underlying policy is to protect the dignity of the judicial process. *Id.* at 601. To establish her sex discrimination claims, Bradley argues that Harcourt's explanation that they terminated her because she was performing her job inadequately was pretextual, because she believed that she was performing competently. Then, to establish her disability discrimination claims, she argues that her memory and concentration problems substantially limited her ability to work, leading us to believe she was not fulfilling her job responsibilities. We recognize that the law does not preclude a plaintiff from bringing both a sex discrimination and a disability discrimination claim in the same suit. We further recognize that a discrimination plaintiff who seeks to show she is substantially limited in her ability to work must tread carefully so as not to undo her contention that she is qualified for the position. However, Bradley undermines her credibility by simultaneously telling two different stories about her work performance.

Because Bradley has failed to produce evidence showing she has a disability, we affirm the district court's grant of summary judgment in favor of Harcourt on the disability discrimination claims.

AFFIRMED.

---

**2.** Bradley did file a claim for disability with her employer. However, that application was not the subject of a legal proceeding.