**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 7 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MARK MCDONALD,

        Plaintiff-Appellant,

  v.

MOLINA HEALTHCARE OF
WASHINGTON, INC., a domestic profit
corporation,

        Defendant-Appellee,

 and

MOLINA HEALTH CARE, INC., a foreign
profit corporation,

        Defendant.

No. 22-35108

D.C. No. 2:20-cv-01189-JCC

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Submitted February 15, 2023[**]
Seattle, Washington

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: W. FLETCHER and VANDYKE, Circuit Judges, and LIBURDI,*** District Judge.

Plaintiff-Appellant Mark McDonald appeals from the district court's grant of summary judgment in favor of Defendant-Appellee Molina Healthcare of Washington, Inc. ("MHW") on his Americans with Disabilities Act ("ADA") claims. McDonald suffers from a hearing impairment and argues that MHW failed to accommodate his disability and engaged in disability discrimination and retaliation. The parties are familiar with the other facts, so we do not repeat them here.

We have jurisdiction under 28 U.S.C. § 1291. We review de novo, *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1133 (9th Cir. 2001), and may affirm on any basis supported by the record, even one not relied upon by the district court, *Curley v. City of North Las Vegas*, 772 F.3d 629, 631 (9th Cir. 2014). We affirm.

The district court correctly analyzed McDonald's ADA discrimination and retaliation claims under the *McDonnell Douglas* burden-shifting framework because McDonald could not show direct proof of discrimination or retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Without direct proof, a plaintiff has the initial burden of showing a prima facie case of

---

*** The Honorable Michael T. Liburdi, United States District Judge for the District of Arizona, sitting by designation.

2

discrimination or retaliation. *Curley*, 772 F.3d at 632. To establish a prima facie case of discrimination, a plaintiff must show that: (1) he is a disabled person within the meaning of the ADA; (2) he is a qualified individual with a disability; and (3) he suffered adverse employment action because of his disability. *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001). Similarly, to establish a prima facie retaliation claim, a plaintiff must establish that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064–65 (9th Cir. 2002). If the employee satisfies this initial burden, the burden then shifts to the employer to establish a legitimate, non-discriminatory (or non-retaliatory) reason for the challenged actions. *Id.* at 1062. If the employer can establish as much, the burden returns to the employee, who must then show that the proffered reason is pretextual. *Id.*

Even if McDonald could satisfy the prima facie showing of discrimination or retaliation based on his hearing disability, MHW articulated a legitimate, non-discriminatory, non-retaliatory reason for terminating McDonald's employment grounded in his inappropriate workplace behavior. MHW provided uncontroverted evidence that McDonald threatened to break employees' arms if they entered his workspace without knocking, identified himself as the "ladies leg wrestling coach," repeatedly referred to his female supervisor as "Mr. Man," called his female

3

coworker "fireball" and "tigress," discussed his celibacy with his coworkers, and sent unprofessional emails to his superiors.

While McDonald takes issue with how his conduct was characterized, he does not deny making the remarks or engaging in the conduct. And McDonald did not proffer any factual basis for his claims that other employees were treated differently beyond his own conclusory testimony and pleadings. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (explaining that, to survive summary judgment, a party needs to offer facts beyond conclusory pleadings and self-serving testimony).

McDonald further failed to establish that MHW's reasons for the challenged actions were pretextual. Where, as here, the record establishes that the "same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270–71 (9th Cir. 1996). It is uncontested that Olson hired McDonald, that she was aware of his hearing disability at the time of his hiring, and that Olson ultimately made the decision to terminate him. To show pretext, McDonald needed to have mustered "the extraordinarily strong showing of discrimination necessary to defeat the same-actor inference." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1097 (9th Cir. 2005). He failed to do so.

McDonald finally argues that his workplace behavior cannot be viewed as a legitimate non-discriminatory reason for his termination because his comments relating to entering his workspace without knocking were directly related to his hearing disability. But it is unclear how this disability necessitates threats about breaking his coworkers' arms. In any event, MHW provided ample evidence of multiple instances of inappropriate conduct beyond the "broken arm" comment.

The district court also properly dismissed McDonald's failure to accommodate claim. McDonald requested a TTY/TDD machine and a private office to accommodate his hearing impairment.[1] The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if (1) the employee is a qualified individual, (2) the employer receives adequate notice, and (3) a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business. *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (internal quotation marks omitted). Importantly, an "employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Zivkovic v. S. Cal.*

---

[1] McDonald filed a Motion for this Court to Take Judicial Notice of Supplemental Authorities and/or Supplement the Record (ECF No. 27). Having considered the Motion and materials filed in connection, the Court grants the Motion to the extent that we take judicial notice of the information describing the various hearing assistance technologies. *See* Fed. R. Evid. 201(b)(2).

*Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (quotation marks and citation omitted).

MHW demonstrated meaningful efforts to reasonably accommodate McDonald's disability. *See Snapp*, 889 F.3d at 1095 (stating that notifying an employer of a need for an accommodation "triggers a duty to engage in an interactive process . . . for accommodating the employee") (internal quotation marks omitted). The MHW office does not have any available private workspaces available for employees below the title of director. To minimize background noise, MHW placed McDonald in a cubicle against a wall in the quietest area of the office floor. MHW also provided McDonald with a special amplifying headset to assist him while it worked to acquire a TTY/TDD machine.

McDonald failed to show that the accommodations furnished by MHW were insufficient for him to perform the essential functions of his job. McDonald admitted that he was doing more work than his peers and that MHW was giving him additional responsibilities. If anything, the record demonstrates that McDonald was more productive than his peers and clearly capable of performing the essential functions of his job with the accommodations MHW provided. It was McDonald's own workplace conduct and his poor interaction with other MHW employees that prompted his separation.

**AFFIRMED.**

6